IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MONA FRISELL and PETRA FRISELL, | ) ) ) | CIVIL ACTION No. 3:14-13 |
| Plaintiffs, | ) ) | JUDGE KIM R. GIBSON |
| v. | ) ) | |
| THE GRIER SCHOOL and EMILY ZIENTEK, | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

**I.  Introduction**

This case arises from the sale of a horse named Aria, which Plaintiffs contend was lame.  Plaintiffs have asserted a number of claims against Defendants, attempting to recover their alleged losses from the transaction involving the sale of the horse.  Presently before the Court is Defendants' motion to dismiss (ECF No. 7) the complaint on various grounds.  Specifically, Defendants move to dismiss the complaint for:  (1) lack of subject matter jurisdiction, (2) failure to join a necessary party, and (3) failure to state a claim pursuant to Rule 12(b)(6).  For the reasons stated below, the Court will **GRANT** Defendants' motion to dismiss the complaint, because Plaintiffs have failed to satisfy the jurisdictional amount in controversy.

**II.  Background**

Plaintiffs initiated this action attempting to recover damages arising from their purchase of a show jumping horse, which they contend was lame.  Plaintiffs allege the

1

following facts in their complaint, which the Court will accept as true for the sole purpose of deciding the pending motion to dismiss.

Eva Frissel was a member of the Grier School Varsity Show Jumping Team. (ECF No. 1, Compl. ¶ 6). On February 5, 2010, Eva's mother and grandmother—the Plaintiffs in this case—purchased an eight-year-old Oldenburg Mare, named Aria, for Eva to use for show jumping. (*Id.* ¶ 6). Plaintiffs purchased the horse "from Defendant Zientek's friend Nancy Steriett on behalf of owner Elizabeth Hammerman." (*Id.* ¶ 6). The purchase price for the horse at the time of the February 5, 2010, transaction was $20,000. (*Id.* ¶ 38). The insurance value of the horse was $20,000 based on the assumption that the horse was sound. (*Id.* ¶ 38).

Defendant Zientek is the Grier School Riding Director and Trainer. (ECF No. 1 ¶ 7). Plaintiffs accepted Defendant Zientek's offer to assist them in purchasing the horse. (*Id.* ¶ 7). Defendant Zientek counseled Plaintiffs to purchase Aria as the appropriate horse for Eva. (*Id.* ¶ 7). Defendant Zientek received a financial commission for brokering the sale, a fact that Defendants did not disclose to Plaintiffs. (*Id.* ¶ 8). Plaintiffs relied on Defendant Zientek's knowledge, experience, and advice regarding the proper type of horse that Eva should use in pursuing her aspirations regarding varsity show jumping. (*Id.* ¶ 9). Defendant Zientek assured Plaintiffs that Aria was an appropriate horse for Eva's use, given the horse's training, age, breed, and future value as a broodmare. (*Id.* ¶ 11).

Prior to the purchase of the horse, Defendant Zientek advised Plaintiffs to submit Aria to a lengthy veterinary exam with x-rays of the horse's front and back legs. (*Id.* ¶ 13).

2

Defendant Zientek scheduled and attended the pre-purchase veterinary examination of Aria at the Center Equine Practice on January 20, 2010, on behalf of Plaintiffs. (*Id.* ¶¶ 13-14). Thereafter, Plaintiffs requested the results of the pre-purchase examination on several occasions from Defendant Zientek. (*Id.* ¶ 15). Defendant Zientek never provided Plaintiffs with the written results of the examination, but nevertheless assured them that the horse had passed "with flying colors." (*Id.* ¶ 15). Plaintiffs first learned the results of the pre-purchase examination on February 20, 2013, at which time they learned that the horse was lame. (*Id.* ¶ 15).

Defendant Zientek received the written pre-purchase examination report on January 20, 2010. (*Id.* ¶ 16). The examining veterinarian stated in the report, "discussed straight hock confirmation and appearance indicates likely degenerative change in hocks." (*Id.* ¶ 16). Despite Defendant Zientek's statement to Plaintiffs that x-rays were "a must for jumping horses," the report stated that radiographs were not requested. (*Id.* ¶ 17). Defendant Zientek told the examining veterinarian, Dr. Jessica Hoffman, that the owner had stated that x-rays were not required. (*Id.* ¶ 20). Plaintiffs received a bill from Defendant Grier School for the pre-purchase examination, which included charges for x-rays, thus leading Plaintiffs to believe that x-rays had been taken. (*Id.* ¶ 18). Defendant Zientek represented to Plaintiffs that Aria had a clean bill of health with no previous history of problems. (*Id.* ¶ 19).

After purchasing the horse, Plaintiffs executed an agreement with Defendant Grier School—"Grier School Stables Free Lease Agreement"—for the boarding and care of Plaintiffs' horse. (*Id.* ¶ 21). At Defendant Zientek's direction, Aria participated in show

3

jumping events with Eva as the rider, despite Aria's actual physical condition, which Defendant knew or had reason to know was never communicated to Plaintiffs. (*Id.* ¶ 22). At the time of purchase, Aria was suffering from degenerative changes in its hocks and was becoming increasingly lame and unsuitable for its intended purpose, that of show jumping. (*Id.* ¶ 23). However, Eva used the horse in show jumping from February 2010 through September 2011. (*Id.* ¶ 24).

In September 2011, Plaintiffs decided to sell Aria. (*Id.* ¶ 25). Defendant Zientek then arranged for a veterinary examination of the horse on September 28, 2011, by the Center Equine Practice. (*Id.* ¶ 26). The results of this examination stated that the horse suffered from chronic right foot lameness since the summer. (*Id.* ¶ 26). The examining veterinarian arranged to take x-rays of the horse on October 7, 2011, and thereafter diagnosed Aria as suffering from navicular degeneration and recommended that the horse's activity level be limited to light work on flat ground. (*Id.* ¶ 26). Defendant Zientek never informed Plaintiffs of the September 28 and October 7, 2011, veterinary examination results, and Plaintiffs did not learn of the horse's true physical condition until February 20, 2013. (*Id.* ¶ 27). At some point in time, Plaintiffs requested and received medical records concerning treatment and evaluation of the horse from Center Equine Practice. (*Id.* ¶ 28). Defendant Zientek continued to use the horse in horse shows on behalf of and for the benefit of the Grier School during the summer of 2011. (*Id.* ¶ 30).

In January 2013, Plaintiffs advised Defendant Zientek that they intended to move the horse to Florida to be examined by a potential buyer. (*Id.* ¶ 31). That same month, Aria was transported to the Windsor Equestrian Center in Okeechobee, Florida and came

under the care of a trainer named Arno Mares. (*Id.* ¶ 33). Mr. Mares requested that Defendants provide him with Aria's medical records from the Center Equine Practice, but Defendants failed to respond to his request. (*Id.* ¶ 33). Mr. Mares then informed Plaintiffs that Aria had been lame upon arrival at Windsor Equestrian Center. (*Id.* ¶ 33).

Plaintiffs' insurance company requested documentation regarding the horse's health, but Defendants never provided the requested medical documentation to the insurance agent. (*Id.* ¶¶ 34-36). Upon the horse's arrival in Florida, veterinarians examined Aria on January 21, January 31, February 7, and February 12, 2013. (*Id.* ¶ 37). Aria was diagnosed with "severe navicular disease and the prognosis for the horse was poor for performance." (*Id.* ¶ 37). The examining veterinarian recommended that the horse not be ridden and that "pasture usage is the best outcome to be expected." (*Id.* ¶ 37).

Plaintiffs filed a five-count complaint against Defendants on January 15, 2014, asserting Pennsylvania common law tort claims. In Count I, Plaintiffs assert a claim against Defendant Zientek for intentional misrepresentation. (*Id.* ¶¶ 41-43). In Count II, Plaintiffs assert a claim against both Defendants for breach of fiduciary duty. (*Id.* ¶¶ 44-47). In Count III, Plaintiffs assert a claim against Defendant Grier School for negligent supervision. (*Id.* ¶¶ 48-54). In Count IV, Plaintiffs assert a claim against Defendant Grier School for respondeat superior. (*Id.* ¶¶ 55-56). In Count V, Plaintiffs assert a claim against Defendant Zientek for professional negligence. (*Id.* ¶¶ 57-61).

Defendants then filed the instant motion, asking the Court to dismiss the complaint on several grounds. (ECF No. 7). First, Defendants argue that this Court lacks

5

subject matter jurisdiction because Plaintiffs have not alleged the requisite jurisdictional amount to invoke the Court's diversity jurisdiction. (*Id.* ¶¶ 12-13). Second, Defendants contend that Plaintiffs have failed to join a necessary party by failing to name the seller of the allegedly lame horse as a defendant. (*Id.* ¶ 14). Third, Defendants assert that each of Plaintiffs' five counts in the complaint fail to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). (*Id.* ¶¶ 15-19). The parties have briefed the Court on the issues raised (*see* ECF Nos. 8, 10, 14), and this matter is now ripe for adjudication.

### III. Discussion

Defendants first argue that the complaint should be dismissed because this Court lacks subject matter jurisdiction. Plaintiffs attempt to invoke this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). Defendants concede that diversity of citizenship is present, because—as alleged in the complaint—both Plaintiffs are citizens of the State of Florida while both Defendants are citizens of the State of Pennsylvania. (*See* ECF No. 1, Compl. ¶¶ 1-3). However, Defendants contend that Plaintiffs have failed to establish the requisite jurisdictional amount in controversy.

#### A. Legal Standard for Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) governs a challenge concerning a court's subject matter jurisdiction. A Rule 12(b)(1) motion to dismiss addresses "the very power [of the court] to hear the case." *Judkins v. HT Window Fashions Corp.*, 514 F. Supp. 2d 753, 759 (W.D. Pa. 2007) (quoting *Mortensen v. First Federal Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "As the party asserting jurisdiction, [the plaintiff] bears the burden of

showing that its claims are properly before the district court." *Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F. 3d 156, 158 (3d Cir. 1995). "In reviewing a Motion to Dismiss pursuant to Rule 12(b)(1), this Court must distinguish between facial attacks and factual attacks. A facial attack challenges the sufficiency of the pleadings, and the Court must accept the Plaintiff's allegations as true." *Stuler v. I.R.S.*, No. 2:12-cv-0391, 2012 WL 1893579, at *1 (W.D. Pa. May 24, 2012) (citing *Petruska v. Gannon Univ.*, 462 F. 3d 294, 302 (3d Cir. 2006)). On the other hand, "[i]n a factual attack, this Court must weigh the evidence relating to jurisdiction, with discretion to allow affidavits, documents, and even limited evidentiary hearings." *Id.* (citing *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F. 3d 506, 514 (3d Cir. 2007)); *see also Long v. Tommy Hilfiger U.S.A., Inc.*, No. 2:09-cv-1701, 2011 WL 635271, at *2 (W.D. Pa. Feb. 11, 2011). Here, Defendants assert a facial attack, arguing, "the Complaint fails to allege a sufficient basis to demonstrate that the $75,000 jurisdictional amount is genuinely in controversy." (ECF No. 8 at 7).

Pursuant to 28 U.S.C. § 1332(a), "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States." Thus, in addition to requiring complete diversity of citizenship among the parties, the statute requires that the amount in controversy exceed $75,000 in order to invoke this Court's diversity jurisdiction. *See Kosicki v. Nationstar Mortgage, LLC*, 947 F. Supp. 2d 546, 558 (W.D. Pa. 2013). Plaintiffs bear the burden of showing that the amount in controversy exceeds $75,000. *Coregis Ins. Co. v. Schuster*, 127 F. Supp. 2d 683, 685 (E.D. Pa. 2001). While the Court should accept Plaintiffs' good faith allegation of the jurisdictional

amount, "[o]nce a defendant has challenged the plaintiff's allegations regarding the amount in controversy, the plaintiff must produce sufficient evidence to justify its claims." *Nationwide Mut. Ins. Co. v. Brown*, 387 F. Supp. 2d 497, 498 (W.D. Pa. 2005) (citing *Columbia Gas Transmission Corp. v. Tarbuck*, 62 F. 3d 538, 541 (3d Cir. 1995)).

The Court must determine the amount in controversy from the complaint itself. *Angus v. Shiley Inc.*, 989 F. 2d 142, 145 (3d Cir. 1993) (citing *Horton v. Liberty Mutual Ins. Co.*, 367 U.S. 348, 353 (1961)). The amount in controversy is to be measured "by a reasonable reading of the value of the rights being litigated" and not by the "low end of an open-ended claim." *Angus*, 989 F. 2d at 146. Thus, "[t]he rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Columbia Gas Transmission Corp. v. Tarbuck*, 62 F. 3d 538, 541 (3d Cir. 1995) (quoting *St. Paul Mercury Indemnity Co. v. Red Cab. Co.*, 303 U.S. 283, 288 (1938)). "[W]hether the claims are for less than the jurisdictional amount depends on what damages a plaintiff could conceivably recover under state law." *Jayme v. MCI Corp.*, 328 F. App'x 768, 771 (3d Cir. 2008) (citing *Suber v. Chrysler Corp.*, 104 F. 3d 578, 584 (3d Cir. 1997)).

**B. Analysis: The Court lacks subject matter jurisdiction.**

Plaintiffs' complaint fails to establish that the jurisdictional amount in controversy exceeds the statutory minimum of $75,000. In Count I of the complaint, Plaintiffs assert a

8

claim for intentional misrepresentation against Defendant Zientek. (ECF No. 1, Compl. ¶¶ 41-43). Specifically, Plaintiffs aver that Defendant Zientek's statements, conduct, and representations "regarding the horse's true physical condition constitute common law fraud, fraudulent inducement and intentional misrepresentations of fact which were made with the specific intent to induce the Plaintifsf [sic] to enter into a contract . . ." (*Id.* ¶ 42). Plaintiffs allege that, because of Defendant Zientek's misrepresentations, they "suffered damages in the form of the purchase price of $20,000.00 together with consequential and incidental damages flowing from the physical condition of the horse." (*Id.* ¶ 43). Plaintiffs then demand judgment for "a sum in excess of $100,000.00." (*Id.*).

However, Plaintiffs' demand for judgment in an amount in excess of $100,000 is simply not supported by the allegations contained in the complaint. Plaintiffs allege that, in purchasing the horse, they relied on Defendant Zientek's statements, conduct, and representations concerning the horse's condition. Plaintiffs allege that Defendant Zientek made those statements and representations to induce the Plaintiffs to enter into a contract to buy the horse. (*Id.* ¶ 42). According to the complaint, under the terms of the contract, Plaintiffs purchased "an eight year old Oldenburg Mare . . . for the specific purpose of permitting [Eva] to take part in and belong to the Grier School Varsity Show Jumping Team." (*Id.* ¶ 6). The purchase price for the horse under the contract was $20,000. (*Id.* ¶ 38). After Plaintiffs purchased the horse, Eva used the horse in show jumping from February 2010 through September 2011. (*Id.* ¶ 24). In January 2013, when Plaintiffs attempted to sell the horse, they learned, for the first time, that the horse was lame, and Plaintiffs were thus unable to consummate the sale. (*Id.* ¶¶ 31-33).

Even accepting as true Plaintiffs' allegations that the Defendants fraudulently induced them to enter into a contract to buy the horse, the actual loss for which Plaintiffs would be entitled to recover is far less than the requisite jurisdictional amount. "Under Pennsylvania law, in an action based on fraud, the measure of damages is 'actual loss,' and not the benefit, or value, of that bargain." *Delahanty v. First Pennsylvania Bank, N.A.*, 464 A. 2d 1243, 1257 (Pa. Super. 1983) (citing *Kaufman v. Mellon National Bank & Trust Co.*, 366 F. 2d 326 (3d Cir. 1966) and *Savitz v. Weinstein*, 149 A. 2d 110, 113 (Pa. 1959)). "Ordinarily, in assessing damages, the endeavor is 'to give actual compensation by graduating the amount of the damages exactly to the extent of the loss.'" *Peters v. Stroudsburg Trust Co.*, 35 A. 2d 341, 343 (Pa. 1944) (citations omitted). Thus, "[t]he law in Pennsylvania is clear that in an action for fraud and deceit the measure of damages is the difference in value between the real, or market, value of the property at the time of the transaction and the higher, or fictitious, value which the buyer was induced to pay for it." *Sands v. Forrest*, 434 A. 2d 122, 124 (Pa. Super. 1981) (collecting cases). Even assuming that Plaintiffs lost the entire value of the horse by entering the contract, the actual loss of value is only $20,000, far short of the statutory minimum.

Plaintiffs have attempted to inflate this amount by alleging that they are entitled to "consequential and incidental damages flowing from the physical condition of the horse." (ECF No. 1 ¶ 43). However, Plaintiffs have failed to identify those "consequential and incidental" damages and have failed to quantify them in any meaningful way. "[M]ere speculation that a claim will exceed the jurisdictional amount is not enough to confer federal jurisdiction." *Russ v. Unum Life Ins. Co.*, 442 F. Supp. 2d 193, 198 (D.N.J. 2006); *see*

10

*also Nelson v. Keefer*, 451 F. 2d 289, 294 (3d Cir. 1971) (explaining that the congressional mandate regarding the amount in controversy in a diversity claim cannot be "thwarted by the simple expedient of inflating the complaint's *ad damnum* clause"). Likewise, Plaintiffs have not presented any affidavits or jurisdictional evidence from which this Court can conclude that it properly has subject matter jurisdiction. *See Tanzymore v. Bethlehem Steel Corp.*, 457 F. 2d 1320, 1323 (3d Cir. 1972) ("If a plaintiff whose assertion of federal jurisdiction is challenged by a motion to dismiss fails to bring forth any factual material to support his claim to jurisdiction, then dismissal may properly be granted against him.").

In their brief in opposition to the motion to dismiss, Plaintiffs argue that "lifetime expenses" are recoverable as appropriate damages in a fraud case. ([ECF No. 10 at 7](#)). In support of this assertion, Plaintiffs explain, "For example, a personal injury Plaintiff may recover for future medical expenses, loss of earnings, and loss of earning capacity, all items of economic damages which will arise in the future. No citation of authority should be necessary for this proposition . . ." (*[Id.](#)*). While Plaintiffs are correct that future medical expenses, loss of earnings, and loss of earning capacity are all available damages in a personal injury action, the instant case does not involve personal injury. This Court has found no authority—and Plaintiffs have cited no authority—stating that a fraud claim, such as the claim in this case, may give rise to the types of future damages available in a personal injury action. To the contrary, the law in Pennsylvania is clear that the proper measure of damages in a fraud case is actual loss.

In sum, Plaintiffs have asserted a Pennsylvania common law fraud claim against Defendants arising from the sale of a horse, for the sum of $20,000. While Plaintiffs seek

11

to recover damages in an amount in excess of $100,000, the facts—as alleged in the complaint—simply do not support such a request for relief based on the scope of damages permitted by Pennsylvania law. *See Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F. 3d 392 (3d Cir. 2004) ("[E]stimations of the amounts recoverable must be realistic. The inquiry should be objective and not based on fanciful, 'pie-in-the-sky,' or simply wishful amounts."). Thus, Plaintiffs have not alleged sufficient damages to satisfy the statutory amount in controversy for federal diversity jurisdiction.[1]

Plaintiffs' claims for damages under the remaining four counts[2] also fail to establish the minimum jurisdictional amount for similar reasons. In Count II of the complaint, Plaintiffs seek compensatory damages as a result of Defendants' breach of a fiduciary duty. "Generally in tort claims, 'a tortfeasor is liable for all the damages which ordinarily and in the natural course of things have resulted from the commission of the tort.'" *McDermott v. Party City Corp.*, 11 F. Supp. 2d 612, 628 (E.D. Pa. 1998). Further, "for breach of fiduciary duty, Pennsylvania does not permit an award of damages that are merely speculative," but requires proof of actual loss. *In re Mushroom Transp. Co., Inc.*, 366

---

[1] In their brief in opposition to the motion to dismiss, Plaintiffs invoke the "gist of the action" doctrine to support their claim for tort damages. (ECF No. 10 at 6) ("The damages available in this case are to be determined on the basis of the 'gist of the action' doctrine."). Plaintiffs' perplexing argument misstates the typical application of this doctrine. Ordinarily, a defendant raises the doctrine in an attempt to limit claims brought by a plaintiff to contract based claims only, and thereby preclude tort claims. Plaintiffs have alleged tort claims in the complaint. If the gist of the action doctrine were applied here, as urged by the Plaintiffs, then the Plaintiffs' claims might be limited to a contract claim, rather than the asserted tort claims. Even if the Court were to find that Plaintiffs' claims sound in contract rather than tort, the amount in controversy would nevertheless fail to satisfy the minimum statutory requirement.

[2] Defendants also seek dismissal of each of these claims under Rule 12(b)(6) for failure to state a claim. Because the Court finds that it lacks subject matter jurisdiction, the Court will not evaluate these claims under the Rule 12(b)(6) standard.

B.R. 414, 443 (Bankr. E.D. Pa. 2007). Plaintiffs allege that a fiduciary duty was created by the relationship established between Plaintiffs and Defendant Zientek related to the purchase and care of the horse. (ECF No. 1 ¶ 45). Plaintiffs allege that Defendant Zientek breached that duty by "misrepresentations of fact" and "failure to exercise due care for the usage and health of the horse." (*Id.* ¶ 47). Based on this alleged breach, Plaintiffs seek damages for "recovery of the purchase price together with incidental and consequential damages," again demanding judgment "in excess of $100,000.00." (*Id.*). As explained above, the purchase price of the horse was $20,000. Likewise, Plaintiffs have not identified nor quantified any incidental and consequential damages flowing from the alleged breach of the fiduciary duty. The breach of duty asserted by Plaintiffs—that Defendant Zientek misrepresented facts to induce Plaintiffs to enter the sales contract for the horse—resulted in the Plaintiffs purchasing a lame horse. Assuming that the Plaintiffs can recover the entire value of the purchase price of the horse, that amount was only $20,000, far less than the requisite jurisdictional amount.

In Count III, Plaintiffs assert a negligent supervision claim[3] against the Grier School, alleging that "Defendant either knew or should have known at the time of Defendant Zientek's actions and inactions, that she had a propensity to be untruthful in her dealings with owners of the horses which came under her care and Defendant Grier

---

[3] "To recover for negligent supervision under Pennsylvania law, a plaintiff must prove that his loss resulted from (1) a failure to exercise ordinary care to prevent an intentional harm by an employee acting outside the scope of his employment, (2) that is committed on the employer's premises, (3) when the employer knows or has reason to know of the necessity and ability to control the employee." *Belmont v. MB Inv. Partners, Inc.*, 708 F. 3d 470, 487-88 (3d Cir. 2013) (citing *Dempsey v. Walso Bureau, Inc.*, 246 A. 2d 418, 420 (Pa. 1968); *Heller v. Patwil Homes, Inc.*, 713 A. 2d 105, 107–08 (Pa. Super. Ct. 1998)).

13

School's care, and had a propensity to misuse and mishandle said horses, and failed to take steps to prevent such conduct." (ECF No. 1 ¶ 53). Plaintiffs do not identify any specific harm resulting from Defendant Grier School's negligent supervision of Defendant Zientek, but simply demand judgment "in excess of $100,000.00." In any case, Defendant Grier School's liability for Defendant Zientek's misrepresentations, resulting in Plaintiffs purchasing the lame horse, does not exceed the $20,000 purchase price of the horse, thus failing to satisfy the amount in controversy requirement for diversity jurisdiction. Likewise, Count IV, which alleges a claim for relief on the basis of respondeat superior, fails to satisfy the jurisdictional requirement for a similar reason. An employer "cannot be assessed a greater measure of damages than that imposed upon his employe, who was the active tort-feasor." *Ferne v. Chadderton*, 69 A. 2d 104, 107 (Pa. 1949).

Finally, in Count V, Plaintiffs assert a claim for professional negligence against Defendant Zientek, and request "damages in the nature of the expenses they incurred in the care of a horse which was not suitable for its intended use, [and] the horse's loss of value," and demand judgment in an amount in excess of $100,000. (ECF No. 1 at 61). "Under Pennsylvania law, an action for professional negligence requires proof of actual loss. The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of action for negligence." *Carnegie Mellon Univ. v. Schwartz*, 105 F. 3d 863, 867 (3d Cir. 1997) (citing *Rizzo v. Haines*, 555 A. 2d 58, 68 (Pa. 1989)); *see also Ibn-Sadiika v. Riester*, 551 A.2d 1112, 1115 (Pa. Super. 1988) (in a complaint asserting damages resulting from a claim of professional negligence, "nominal damages, speculative harm, or the threat of future

14

harm, do not provide the basis for a cause of action: there must be proof of actual loss"). Here, Plaintiffs allege actual loss in the amount of the purchase price of the horse, which was $20,000. As stated before, the purchase price of the horse falls far short of satisfying the jurisdictional requirements. To the extent that Plaintiffs seek to recover the costs of boarding the horse, such costs are not the result of any tortious conduct alleged in the complaint, as the Plaintiffs would have incurred the costs of boarding whether the horse was lame or not. Nevertheless, even if the costs of boarding the horse were recoverable damages, Plaintiffs have not alleged any facts showing that such costs would raise the amount in controversy above the $75,000 statutory threshold.

The Third Circuit has consistently reminded courts that the amount in controversy "provision must be narrowly construed so as not to frustrate the congressional purpose behind it: to keep the diversity caseload of the federal courts under some modicum of control." *Packard v. Provident Nat. Bank*, 994 F. 2d 1039, 1044-45 (3d Cir. 1993). The instant case involves several Pennsylvania common law tort claims arising from Plaintiffs' purchase of a lame horse, for the sum of $20,000. Plaintiffs have not alleged facts that would satisfy the statutory minimum amount in controversy required for federal court diversity jurisdiction.

Accordingly, on the record before the Court, it appears to a legal certainty that Plaintiffs cannot recover damages in an amount that exceeds the statutory minimum required in a diversity case. Plaintiffs' complaint must therefore be dismissed. *See Nelson v. Keefer*, 451 F. 2d 289, 298 (3d Cir. 1971). Under Federal Rule of Civil Procedure 15, leave to amend is to be freely given "when justice so requires." *See In re Burlington Coat Factory*

15

*Sec. Litig.*, 114 F. 3d 1410, 1434 (3d Cir. 1997).  Before dismissing a case for lack of subject matter jurisdiction, a court "must allow plaintiff a chance to amend his complaint, unless amendment would be inequitable or futile."  *Thomas v. Advance Hous., Inc.*, 440 F. App'x 86, 87 (3d Cir. 2011) (citing *Grayson v. Mayview State Hosp.*, 293 F. 3d 103, 108 (3d Cir. 2002)).  Here, the Court finds that leave to amend the complaint would be futile because Plaintiffs are unable to cure the jurisdictional deficiencies regarding the amount in controversy, and the Court therefore dismisses the complaint without leave to amend.  *See Bierley v. Sambroak*, No. 1:13-cv-326, 2014 WL 710004, at *6 (W.D. Pa. Feb. 25, 2014) (dismissing the complaint with prejudice because the court lacked subject matter jurisdiction and the jurisdictional deficiencies were incapable of being cured by way of further amendment); *see also Phillips v. James*, No. 2:13-cv-1196, 2014 WL 1652914, at *9 (W.D. Pa. Apr. 23, 2014) (same).

Finally, because the Court lacks subject matter jurisdiction and dismisses the complaint on that ground, the Court need not consider Defendants' alternate grounds for dismissal.

## IV.  CONCLUSION

For the reasons stated above, the Court finds that Plaintiffs cannot meet the statutory jurisdictional amount in controversy, and the Court will therefore grant Defendants' motion to dismiss Plaintiffs' complaint, without leave to amend.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MONA FRISELL and PETRA FRISELL, | ) ) ) | CIVIL ACTION No. 3:14-13 |
| Plaintiffs, | ) ) ) | KIM R. GIBSON |
| v. | ) ) | |
| THE GRIER SCHOOL and EMILY ZIENTEK, | ) ) ) ) | |
| Defendants. | ) | |

## ORDER

AND NOW, this 29th day of January, 2015, upon consideration of Defendants' motion to dismiss (ECF No. 7) and Plaintiffs' response in opposition, and in accordance with the attached memorandum opinion,

**IT IS HEREBY ORDERED** that the motion is **GRANTED** and Plaintiffs' complaint is **DISMISSED** without leave to amend, but without prejudice to Plaintiffs asserting their claims in a court of competent jurisdiction. The Clerk of Court shall mark this case closed.

BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE